BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

STEPHEN C. WHITTAKER, SBN 283518
  cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:   949.451.3800
Facsimile:   949.451.4220

CARY G. PALMER, SBN 186601
  cary.palmer@jacksonlewis.com
NATHAN W. AUSTIN, SBN 219672
  nathan.austin@jacksonlewis.com
JACKSON LEWIS P.C.
400 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone:   916.341.0404
Facsimile:   916.341.0141

Attorneys for Defendants PRIMERICA, INC., PRIMERICA FINANCIAL SERVICES, LLC, PRIMERICA CLIENT SERVICES, INC., PRIMERICA LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA NAVEJA, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PRIMERICA, INC., a Delaware corporation; PRIMERICA FINANCIAL SERVICES, LLC, a Nevada limited liability company; PRIMERICA CLIENT SERVICES, INC., a Delaware corporation; PRIMERICA LIFE INSURANCE COMPANY, a Tennessee corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO. 2:20-cv-01298-MCE-KJN<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER COMPELLING ARBITRATION AND MOTION TO DISMISS OR STAY**<br><br>Date:    September 17, 2020<br>Time    2:00 p.m.<br>Place:    Sacramento Division, Courtroom 7, 14th Floor<br>Judge:    Hon. Judge Morrison C. England, Jr. |

# TABLE OF CONTENTS

Page

I. The Parties' Agreement Requires Arbitration ................................................................. 1

II. The Parties Delegated the Question of Arbitrability to the Arbitrator ............................ 2

III. The Parties' Agreement Is Valid and Enforceable .......................................................... 3

    A. Nevada Law Governs the Enforceability Analysis ............................................. 3

    B. The Agreement Is Not Procedurally Unconscionable ......................................... 4

    C. The Agreement Is Not Substantively Unconscionable ....................................... 7

    D. The Forum Selection Clause Is Reasonable and Enforceable ............................. 9

IV. This Case Should Be Dismissed or Stayed Pending Arbitration .................................. 10

Plaintiff does not dispute—and in fact, her declaration confirms—that she signed an arbitration agreement with Defendants. Despite being repeatedly notified during the enrollment process that her agreement with Defendants would require her to arbitrate any disputes, and despite admitting that she "signed and initialed where the documents stated to do so," Naveja Decl. ¶ 5, she now contends that she did not understand she was agreeing to arbitrate. But this is not how contracts work. The law presumes a party who signs an agreement has read and understood its terms. The Court should reject Plaintiff's invitation to set aside obligations she indisputably agreed to merely because she now finds them undesirable.

Plaintiff raises a number of other flawed arguments about the enforceability of the arbitration agreement she signed. As an initial matter, the Court need not address these arguments because the Court can conclude that the parties agreed to delegate all arbitrability issues to the arbitrator by expressly incorporating the American Arbitration Association's ("AAA") Commercial Rules. ECF 5-1, Ex. 2 § 15. But even if the Court reaches the enforceability of the agreement, Plaintiff's contentions fail. All of Plaintiff's arguments are premised on California law, but the arbitration agreement is clear that Nevada law applies to the issues of validity and enforceability of the contract. Plaintiff argues that the Court should ignore the choice-of-law clause, but Courts only do that when the selected law is contrary to a fundamental policy of the forum state with respect to the *particular issue in dispute*. Plaintiff fails even to acknowledge—let alone satisfy—this requirement. Moreover, Plaintiff fails to raise—and thus has waived—any argument that the agreement is invalid under Nevada law. Thus, once the Court determines that the choice-of-law clause must be enforced, the Court should end its inquiry and grant Defendants' motion to compel.

But even if the Court were to find that California law applies, the result is the same. Plaintiff has not established that the agreement is either procedurally or substantively unconscionable under California law. Instead, she mischaracterizes inapposite cases to raise arguments that have been repeatedly rejected by courts applying California law. Accordingly, the Court should enforce the plain language of Plaintiff's agreement and compel individual arbitration of all Plaintiff's claims.

**I.      The Parties' Agreement Requires Arbitration**

Plaintiff attempts to create ambiguity where none exists by claiming that the jury trial waiver

and forum selection terms in the agreement, *see* ECF 5-1, Ex. 2 § 15, call into question whether arbitration is the "sole, exclusively remedy for resolving disputes." Opp. at 6. This argument is frivolous and contrary to the law. Courts routinely enforce delegation clauses where the arbitration agreement also provides for a jury trial waiver. *See, e.g.*, *Gilbert Enterprises, Inc. v. Amazon.com*, 2019 WL 6481697, at *1, *6 (C.D. Cal. Sept. 23, 2019). And the Ninth Circuit rejected a nearly identical forum selection argument in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (forum selection provision did not create ambiguity because "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies").

## II.     The Parties Delegated the Question of Arbitrability to the Arbitrator

Though Plaintiff argues that this case should not be arbitrated, the Court can conclude that the parties delegated the question of scope and enforceability of the arbitration provision to the arbitration panel by expressly incorporating the "Commercial Arbitration Rules" of the AAA. ECF 5-1, Ex. 2 § 15; *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," and cautioning that the holding "should not be interpreted to require that the contracting parties be sophisticated"); *Collins v. Diamond Pet Food Processors of California, LLC*, 2013 WL 1791926, at *5 (E.D. Cal. Apr. 26, 2013) (England, J.) (noting same). The fact that the arbitration agreement allows the parties to select JAMS as an alternative arbitrator does not change the result. *See, e.g.*, *Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (incorporation of the "JAMS rules" "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Johnson v. Oracle Am., Inc.*, 2017 WL 8793341, at *7 (N.D. Cal. Nov. 17, 2017).[1]

---

[1] The cases Plaintiff relies on in an effort to avoid delegation are easily distinguishable. In *Ajamian v. CantorC02e, L.P.*, 203 Cal. App. 4th 771, 791 (2012), the court found no "clear and unmistakable" delegation because the defendant retained sole discretion to choose what arbitration rules applied. Here, however, the parties mutually agreed to apply AAA rules, unless *Plaintiff* chooses to arbitrate under JAMS rules. *See* ECF 5-1, Ex. 2 § 15. *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 891 (2008) and *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1566 (2009) are likewise inapposite because in those cases, the severability provisions in the parties' agreements allowed "any court" or "the trier of fact of competent jurisdiction" to determine enforceability of any part of the agreement. Here, by contrast, the severability provision does not reference any specific tribunal or trier of fact, so

Arbitration should be compelled on this threshold basis.

**III.    The Parties' Agreement Is Valid and Enforceable**

If the Court finds that the parties delegated the question of enforceability to the arbitrator, the Court need not address Plaintiff's argument that the arbitration agreement is unenforceable. But even if the Court reaches Plaintiff's enforceability arguments, they fail under Nevada or California law.

**A.    Nevada Law Governs the Enforceability Analysis**

To determine whether to override a contract's choice-of-law provision, "California courts . . . apply the principles set forth in Restatement [(Second) of Conflict of Laws] section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 462, 464–65 (1992). Under *Nedlloyd,* a court considers three factors: (1) "whether the chosen state has a substantial relationship to the parties or their transaction" or else "whether there is any other reasonable basis for the parties' choice of law," (2) whether the chosen state's law is contrary to a *fundamental* policy of California, and (3) if such a conflict exists, "whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.*

Plaintiff makes no argument on the first factor, surely because Primerica Financial Services, LLC is incorporated under the laws of the State of Nevada. ECF 5-1 ¶ 2. Instead, she argues that applying Nevada law would violate a fundamental policy of California because, "[u]nlike in California, there is a presumption of independent contractor status in Nevada for wage and hour claims." *See* Opp. at 14–15.[2] This misses the point. Under *Nedlloyd*, Nevada law must contravene California policy with respect to "the determination of the *particular issue*" at bar. 3 Cal. 4th at 465 (emphasis added); *see also Wainwright v. Melaleuca, Inc.*, 2020 WL 417546, at *3 (E.D. Cal. Jan. 27, 2020). Thus, here, the Court must ask whether application of Nevada law *as to the validity of the agreement* conflicts with a fundamental California policy. It does not. Both states have bodies of law that govern the formation

---

there is no question that the enforceability of the delegation clause is decided by the arbitrator. ECF 5-1, Ex. 2 § 19.

[2] Although not the relevant issue, Plaintiff's argument is plainly wrong. Opp. at 15. Nevada grants a presumption of independent contractor status only if certain conditions are met. Nev. Rev. Stat § 608.0155(1)(c). Plaintiff has not shown that application of this statute, rather than California's independent contractor statute, would violate a fundamental policy of California. Indeed, even if application of the two schemes would lead to different results—and plaintiff has made no such showing here—that would not be sufficient. *Wainwright*, 2020 WL 417546 at *3.

and enforceability of contracts—including rules regarding unconscionability—and Plaintiff does not identify any fundamental policy of California law that would be undermined by applying Nevada's *contract rules. Cf. Wainwright*, 2020 WL 417546 at *3 (the question under *Nedlloyd* was "not whether resolving all of [plaintiff's] claims under Idaho law would violate the forum's fundamental policy; rather, it is whether conducting *an unconscionability analysis of the contract's delegation clause under Idaho law* would violate the forum's fundamental policy") (emphasis added). Thus, Nevada law governs. Plaintiff has failed to challenge the enforceability of the agreement under Nevada law, so if the Court reaches the enforceability issue, it should find that the agreement is enforceable.

### B. The Agreement Is Not Procedurally Unconscionable

Even if the Court were to find that California law applies, Plaintiff's arguments still fail because she cannot establish that the arbitration agreement was a result of oppression or surprise sufficient to warrant a finding of procedural unconscionability. *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 (2016). Plaintiff argues that the arbitration agreement is oppressive because she was required to sign it as a condition of her enrollment with Primerica. Opp. at 6. Even if Plaintiff was an employee (she was not), California courts routinely uphold arbitration agreements that are conditions of employment. *See, e.g.*, *Roman v. Sup. Ct.*, 172 Cal. App. 4th 1462, 1470 (2009) (enforcing arbitration agreement that was a condition of employment, and explaining that "[t]he adhesive nature of [an arbitration] agreement is not dispositive"); *Swarbrick v. Umpqua Bank*, 2008 WL 3166016, at *5 (E.D. Cal. Aug. 5, 2008) (England, J.) (enforcing arbitration agreement because plaintiffs "failed to show that they were either coerced or pressured into agreement").

Moreover, where the "arbitration provision [is] not buried in a lengthy employment agreement" and is clearly presented to the employee, giving her the opportunity to decide whether to accept the agreement as a condition of employment or seek out a different employer, "whatever procedural unfairness is inherent in an adhesion agreement in the employment context" will be "limited." *Roman*, 172 Cal. App. 4th at 1470–71.

Here, there can be no dispute that Plaintiff was fully aware she was agreeing to arbitrate. Twice in the application itself, Plaintiff was specifically advised in very clear, simple text that she was agreeing to arbitration and had to separately indicate her acceptance in each instance. *See* ECF 5-1 ¶ 7, Ex.

1 at 6. In each instance, Plaintiff acknowledged that she accepted the terms and proceeded to the next step, and ultimately submitted her application. Naveja Decl. ¶ 5. The arbitration agreement comprises nearly a full page of a three-page document, it clearly outlines its terms in separate paragraphs, and it states in multiple places the parties' intent to arbitrate. ECF 5-1, Ex. 2 at 9–11. And Plaintiff viewed the agreement at the time of enrollment when she had the flexibility to accept or decline the opportunity to work with Primerica and seek alternate work. Naveja Decl. ¶ 5.[3]

Plaintiff's claim that her "inequality in bargaining power" as a result of her education level and lack of counsel should render the agreement oppressive is at odds with Ninth Circuit law. Opp. at 7, 9; *see G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("[T]he teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules. . . . The parties' degree of sophistication does not change this conclusion."). If Plaintiff's claim were true, only college-educated individuals trained in the law or represented by lawyers could contractually agree to delegate issues to an arbitrator. That obviously is not the law.

Nor can Plaintiff claim the arbitration agreement was a "surprise." Opp. at 9. California "presumes that everyone who signs a contract has read it thoroughly," that the "parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides." *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013). Plaintiff does not dispute that she viewed the IBA and the IBA Supplement, which the application portal requires applicants to review as part of the application process. Opp. at 7; Naveja Decl. ¶ 5. And she admits that she then "signed and initialed," Naveja Decl. ¶ 5, on two occasions to accept the "terms and conditions," Opp. at 7. *See also* ECF 5-1 ¶ 7, Ex. 1 at 6.[4]

---

[3] Even if the Court were to find that the agreement is procedurally unconscionable because it was a condition of Plaintiff's work for Primerica, courts have held that such a finding on its own will not render an arbitration agreement unenforceable. *See Jones-Mixon v. Bloomingdales, Inc.*, 2014 WL 2736020, at *8 (N.D. Cal. June 11, 2014) (where "the degree of procedural unconscionability" "is small," "a greater showing of substantive unconscionability" is required). To hold that an arbitration agreement is unenforceable merely because it is a condition of securing work would render most agreements unenforceable, and would be contrary to the intent of the FAA. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1109, 1122–27. Unsurprisingly, no court has so held.

[4] Plaintiff also claims that it is ambiguous whether the agreement is mutual, and this "ambiguity . . . constitutes surprise." Opp. at 10. As discussed in section 3, this claim is meritless. And even if the agreement were ambiguous (it is not), binding Supreme Court precedent holds that any ambiguity must be resolved in favor of arbitration—without regard to which party was the drafter. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417–19 (2019).

Plaintiff's complaint that the arbitration provision was a "surprise" because "there are no headings and no blank spaces to initial" also is wrong. Opp. at 10. There is no requirement that an arbitration clause be treated differently than any other contractual provision. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015) (noting that parties are "under no obligation to highlight the arbitration clause of its contract, nor . . . to specifically call that clause to [the other party's] attention"). Such a holding would run afoul of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996) (FAA preempted state law requiring arbitration clause to include "underlined capital letters on the first page of the contract"). Tellingly, Plaintiff also ignores that Primerica advised Plaintiff **"to read . . . The Basic Agreement, which contains the terms, including an ARBITRATION AGREEMENT, that will apply to your relationship with Primerica."** *See* ECF 5-1, Ex. 1 at 6 (emphasis added). Further, Plaintiff indicated her approval *twice* before submitting her electronically signed application. *Id.* Plaintiff does not dispute any of these facts.

Plaintiff's claim that the arbitration agreement is procedurally unconscionable because "she had no other job offers" "in pursuit of life's necessities" is similarly unavailing. Opp. at 7–8. Obviously Primerica was not the only company in the world through which Plaintiff could pursue "life's necessities." *Cf. Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) (no procedural unconscionability where there was "neither coercion nor lack of choice, the usual hallmarks of procedural unconscionability" because "potential customers have a wide range of choices other than shipping their packages at Staples"). Plaintiff voluntarily entered into an agreement with Primerica to offer financial tools to clients as an independent contractor. ECF 5-1 ¶ 4. Plaintiff's cases on this issue refer to completely distinguishable situations where it was clear that there were no alternatives—*e.g.*, a contract for a guided Mt. Kilimanjaro expedition where every provider had the same nonnegotiable contract terms, or a loan agreement that explicitly stated plaintiff was unable to secure credit anywhere else—and thus do not change the analysis here. *See Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 823–24 (2010); *Carboni v. Arrospide*, 2 Cal. App. 4th 76, 86 (1991).

Plaintiff also argues that the agreement is procedurally unconscionable because Primerica did not attach a copy of the AAA Rules to the agreement, but both California and federal courts have rejected this argument. *See Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) ("[T]he

failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability."); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (holding that failure to attach the AAA rules did not render the dispute resolution provision oppressive); *Swarbrick*, 2008 WL 3166016 at *4 (same). Thus, Plaintiff has failed to meet her burden of proving procedural unconscionability.

### C. The Agreement Is Not Substantively Unconscionable

Substantively unconscionable contracts are those that are "so one-sided as to shock the conscience." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (quotations omitted). Plaintiff fails to meet this rigorous standard.

**The contract is bilateral.** The arbitration agreement requires both Plaintiff and Primerica to arbitrate "any dispute" related to Plaintiff's relationship with Primerica and is not unilateral like the agreement in *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000), which only required plaintiff to arbitrate claims. All of Plaintiff's arguments for why the agreement is supposedly unilateral fail.

*First*, Plaintiff argues that the agreement exempts certain claims from arbitration, and allows Primerica to seek injunctive relief and collect debts outside of arbitration. But it is well-settled that "parties may agree to limit the issues subject to arbitration." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Wilson v. United Health Grp., Inc.*, 2012 WL 6088318, at *4 (E.D. Cal. Dec. 6, 2012) (finding mutuality even where specific claims excepted from arbitration) (England, J.). Moreover, California courts recognize that "a contract can provide a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1536 (1997) (quotation omitted). Here, the agreement allows Primerica to seek injunctive relief in aid of arbitration to enforce restrictive covenants, and to assert its contractual indemnification rights against a representative if a third party brings an action against Primerica due to harm caused by the representative. ECF 5-1, Ex. 2 §§ 13, 17. These highly specific exceptions serve legitimate commercial needs and do not "shock the conscience" so as to render the agreement unconscionable. *Baltazar*, 62 Cal. 4th at 1244.

*Second*, Plaintiff argues that the contract is not bilateral because it states that "[a] Primerica

Company may exercise rights under this Agreement without first being required to enter into good faith negotiations or initiate arbitration." ECF 5-1, Ex. 2 § 15. Plaintiff reads this to mean that only she is required to undertake the negotiation process and to arbitrate her claims. This opportunistic misreading fails. The only sensible reading of this provision is that it applies solely in the specific and narrow circumstances in which Primerica is forced to pursue urgent relief to protect its commercial interests described above. Indeed, the contract makes clear that "any dispute," other than those specifically excepted in the agreement, "will be settled solely thought good faith negotiation . . . or, if that fails, binding arbitration." *Id.* Adopting Plaintiff's reading would render that language meaningless, a result California law prohibits. *See People v. Woodhead*, 43 Cal. 3d 1002, 1010 (1987). Plaintiff's reliance on *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282–83 (2004) is therefore misplaced. There, the court found that "given the unilateral nature of the arbitration agreement," "an employer-controlled dispute resolution mechanism" would effectively provide the defendant with a "free peek at plaintiff's case." Since both parties are required to arbitrate their disputes against one other, the concern in *Nyulassy* does not exist here.

*Third*, Plaintiff argues that the agreement requires Plaintiff to indemnify Primerica but not vice versa, relying on *Lhotka*, 181 Cal. App. 4th at 825. In that case, the court struck down an indemnification provision as unconscionable because it required the plaintiff to reimburse the defendant for any "costs and attorney fees" defendant incurred "defending any claims covered" by plaintiff's liability release. *Id.* at 820. Here, by contrast, section 13 of the Basic Agreement only requires indemnification if Plaintiff's conduct causes "harm" to third parties. ECF 5-1, Ex. 2 § 13.

*Finally*, Plaintiff contends that the agreement requires different notice methods for Primerica and Plaintiff. But Plaintiff does not, and cannot, cite a single case in which a court held that a notice provision of this nature rendered an arbitration agreement unconscionable. This is hardly surprising, as a small difference in notice methods simply does not shock the conscience.

**The AAA rules allow adequate discovery.** Plaintiff claims that the agreement is unconscionable because the AAA rules unfairly restrict "depositions and discovery requests," Opp. at 14, but courts have rejected this very argument. *See, e.g.*, *Melez v. Kaiser Foundation Hosps., Inc.*, 2015 WL

Gibson, Dunn & Crutcher LLP

898455, at *9 (C.D. Cal. Mar. 2, 2015) (upholding discovery limitations in arbitration clause in accordance with AAA rules); *Wishner v. Wells Fargo Bank, N.A.*, 2016 WL 10988765, at *4 (C.D. Cal. Sept. 28, 2016) (holding that "discovery limitations such as the ones here, which merely require compliance with the AAA rules, are not unconscionable"). Moreover, Plaintiff fails to demonstrate how the AAA's discovery provisions could "frustrate[e]" her "statutory rights" so as to render the agreement unconscionable under *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 106 (2020). And Plaintiff ignores that she is free to elect JAMS rules if she does not wish to proceed under AAA rules.

**The choice-of-law provision does not bar California law claims.** Plaintiff insists that the choice-of-law provision is substantively unconscionable because it would "undermine [her] claims that are founded under the California Labor Code." Opp. at 14. This is false. The choice-of-law clause states that "*This Agreement* will be governed by the laws of the state of Nevada." ECF 5-1, Ex. 2 § 22 (emphasis added). In other words, the validity and enforceability of the *agreement itself* are governed by Nevada law. Plaintiff's substantive employment claims are not yet at issue in this case. Plaintiff's reliance on *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227 (2015) for the argument that the "Nevada choice-of-law provision" "contravenes fundamental California policy" is also misplaced. Opp. at 15. In *Pinela*, the choice-of-law provision only allowed the parties to bring claims recognized by Texas law, thereby "nationaliz[ing] the wage-and-hour policies of one state in derogation of the conflicting policies of other states." *See Pinela*, 238 Cal. App. 4th at 257. Here, by contrast, the arbitration agreement does not attempt to supplant California law. Indeed, Plaintiff was free to bring her California law claims in arbitration. *Cf. Wainwright*, 2020 WL 417546, at *6.

### D.   The Forum Selection Clause Is Reasonable and Enforceable

The arbitration agreement contains two forum selection provisions—one related to where the arbitration will take place (the "Arbitration Forum Clause"), and one related to where non-arbitrable disputes must be litigated (the "Non-Arbitration Forum Clause"). ECF 5-1, Ex. 2 § 15. Plaintiff makes several confusing arguments about these clauses, all of which fail.

*First*, Plaintiff argues that the arbitration agreement is unconscionable because the Arbitration Forum Clause requires arbitration to take place in Georgia. That is false. The agreement states that the arbitration can occur in Georgia or "if that is inconvenient to [Plaintiff], in another reasonably

convenient location." *Id.* Thus, unlike the arbitration agreement in *Gutierrez v. Carter Bros. Sec. Servs., LLC*, 63 F. Supp. 3d 1206, 1214 (E.D. Cal. 2014), the agreement in this case does not "fail to provide an accessible forum for Plaintiff[] to vindicate [her] statutory rights."

*Second*, Plaintiff appears to contend that the Non-Arbitration Forum Clause somehow renders the entire arbitration agreement unconscionable. Not surprisingly, Plaintiff cites no case to support the unprecedented pronouncement that an entire arbitration agreement can be held unconscionable based merely on a forum selection provision governing disputes not subject to arbitration.[5]

*Third*, Plaintiff argues that the Non-Arbitration Forum Clause is unenforceable due to "extraordinary circumstances unrelated to the convenience of the parties," but Plaintiff has identified no such circumstances. Instead, Plaintiff merely argues that the clause is "overreaching" and "unconscionable" because flying to Georgia and litigating claims there imposes "expense and inconvenience." Opp. at 15–16, 17. But circumstances related to the "convenience of the parties" do not qualify as "extraordinary circumstances." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) (forum selection clause can be ignored "[o]nly under extraordinary circumstances unrelated to the convenience of the parties").[6]

### IV. This Case Should Be Dismissed or Stayed Pending Arbitration

Because all of Plaintiff's claims are subject to binding arbitration, the Court should dismiss this action to preserve judicial resources and promote efficiency. *See Anderson Plant, LLC v. Batzer Const., Inc.*, 2014 WL 800293, at *5 (E.D. Cal. Feb. 27, 2014). In the alternative, the Court should stay consideration of the claims until completion of the required arbitration. *See* 9 U.S.C. § 3; *Pinto v. Squaw Valley Resort, LLC*, 2018 WL 5630702, at *3 (E.D. Cal. Oct. 31, 2018) (England, J.) (dismissing claims subject to binding arbitration and staying remaining claim pending arbitration).

---

[5] Plaintiff cites *Lhotka*, 181 Cal. App. 4th at 825 n.1, but that case did not discuss forum selection clauses at all.

[6] Plaintiff also contends that she can void the Non-Arbitration Forum Clause under California Labor Code § 925. The Court should not reach this issue in light of the parties' binding arbitration agreement. But even if the Court were to consider it, Plaintiff has not made the requisite showing. Plaintiff is an independent contractor, and Section 925 applies only to employees. Plaintiff cites the wrong test—the *Borello* standard applies here. *See* Cal. Lab. Code § 2783(e). Regardless, Plaintiff has identified no facts *in her complaint*, which contains only conclusory assertions of law, that support application of Section 925. *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2019 WL 5789273, at *3 (N.D. Cal. Nov. 6, 2019) (Section 925 can only apply if a plaintiff "pled facts sufficient to show that [their] misclassification claim ... is plausible."); *see, e.g.*, Compl. ¶ 20.

DATED: September 14, 2020

                              GIBSON, DUNN & CRUTCHER LLP
                              BRIAN M. LUTZ
                              CHRIS WHITTAKER

                      By:  /s/ *Brian Lutz*
                                  Brian M. Lutz

                      Attorneys for PRIMERICA, INC.