UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA NAVEJA, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>PRIMERICA, INC., a Delaware corporation, et. al.,<br><br>Defendants. | No. 2:20-cv-01298-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

By way of this action, Plaintiff Maria Naveja brings a class-action suit against Defendants Primerica, Inc., and its subsidiaries Primerica Financial Services, LLC, Primerica Client Services, and Primerica Life Insurance Company ("Defendants"). Plaintiff initially filed suit in Sacramento County Superior Court, whereupon Defendants timely removed to this Court. In response, Plaintiff moved to remand the action to state court. Defendants oppose Plaintiff's motion, and additionally move to compel arbitration and dismiss or stay these proceedings. For the reasons discussed infra, this Court DENIES Plaintiff's Motion to Remand, GRANTS Defendants' Motion to Compel Arbitration, and stays the Plaintiff's claims pending arbitration.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. L. R. 230(g).

1

**BACKGROUND**

Plaintiff Maria Naveja and the class members she purports to represent were employed as exempt independent contractors with Defendants. As such, Plaintiffs were allegedly not paid certain wages and compensation they would have received if they were classified as employees. According to the Plaintiffs, the "Defendants had the authority to hire and terminate Plaintiff and other class members; to set work rules and conditions governing Plaintiff and the other class members' employment; and to supervise their daily employment activities." Complaint at 7, ECF No. 1-1. Therefore, Plaintiffs allege, "Defendants exercised sufficient authority over the terms and conditions of the plaintiff and the other class members' employment for them to be joint employers of Plaintiff and the other class members." Id. at 8.

Based on these and other similar allegations, Plaintiff brought a class action suit against Defendants in Sacramento County Superior Court alleging violations of eight separate California labor and employment statutes. Complaint, ECF No. 1-1. Defendants then removed the suit to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), and further moved this Court to compel arbitration. Defs.' Mot. Remove, ECF No. 1; Defs.' Mot. Compel Arbitration, ECF No. 5. Defendants argue that Plaintiff agreed to submit the claims alleged in this lawsuit to binding arbitration.

Neither party disputes that the Plaintiff agreed to the "Basic Agreement," which is essentially an employment contract. Defs.' Reply, ECF No. 14. Section 15 of the Basic Agreement ("arbitration clause") states in relevant part:

> **[A]ny dispute** between you and a Primerica Company (or any of their past or present officers, directors or employees) . . . will be settled solely through good faith negotiation . . . or, if that fails, **binding arbitration**. "Dispute" means any type of dispute in any way related to your relationship with a Primerica Company that under law may be submitted by agreement to binding arbitration, including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state or local statues, rules or regulations.

2

> The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). If you do not want to use AAA, then you may select Judicial Arbitration and Mediation Services, Inc. ("JAMS"), or, if mutually agreed, another arbitration administrator.

Defs.' Mot. Compel Arbitration Ex. 2, ECF No. 5-1 (emphasis added).

In response, Plaintiff moved to remand these proceedings to state court and oppose the Defendants' Motion to Compel Arbitration. ECF Nos. 7, 11.

Before this Court can determine whether to compel binding arbitration, however, the Court must first have subject matter jurisdiction. Thus, the Court cannot address Defendants' Motion to Compel Arbitration until Plaintiff's Motion to Remand—which challenges that jurisdiction—has been adjudicated. If it finds that Defendants properly removed the instant action on jurisdictional grounds, the Court can then move onto the substantive motion made by Defendants to compel arbitration of the parties' dispute.

**STANDARD**

**A.    Motion to Remand**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

///

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the Defendants' removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

### B. Compelling Arbitration

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Valid arbitration agreements must be "rigorously enforced" given the strong federal policy in favor of enforcing arbitration agreements. Perry v. Thomas, 482 U.S. 483, 489-90 (1987) (citation omitted). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in the original).

The Supreme Court has repeatedly recognized the strong national policy favoring arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991) (FAA's "purpose was .... to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) (FAA "establishes a 'federal policy favoring arbitration,' . . . requiring that we rigorously enforce agreements to arbitrate." (citations omitted)); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (federal policy of FAA is one which guarantees the enforcement of private contractual arrangements).

Given this policy, it is clear that a court is obligated to liberally interpret and enforce arbitration agreements and to do so "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Significantly, too, any doubts concerning arbitrability should be resolved in favor of arbitration. Mitsubishi Motors Corp., 473 U.S. at 624 n.13 (noting that the appellate court "properly resolved any doubts of arbitrability"); see also Hodsdon v. Bright House Networks, LLC, No. 1:12-cv-1580 AWI JLT, 2013 WL 1499486 at *2 (E.D. Cal. Apr. 11, 2013) ("Because there is a presumption in favor of arbitration, the Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.").

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Rather, in deciding whether a dispute is subject to the arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The Supreme Court has also "recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether parties have agreed to arbitrate or whether their agreement covers a particular controversy. Rent-A-Center, West, Inc. v. Jackson,

561 U.S. 63, 68-69 (2010) (internal quotations omitted). If the agreement to arbitrate contains such a delegation provision, the court must compel arbitration with respect to issues of arbitrability except to the extent there is a challenge as to whether the delegation agreement itself is valid. Id.

**ANALYSIS**

A. **Motion to Remand**

CAFA gives federal district courts original jurisdiction in any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs"; (2) the action is pleaded as a class action involving more than 100 putative class members; and (3) "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d). CAFA also provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." Id. § 1332(d)(6).

In now moving to remand, Plaintiff takes issue only with whether Defendants' calculations of "matter in controversy" are sufficient to confer federal jurisdiction under CAFA. "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). When a plaintiff challenges the amount in controversy under CAFA, the Ninth Circuit requires the defendant opposing remand to demonstrate, by a preponderance of the evidence, that the amount in controversy will likely exceed $5,000,000. Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (2015). Where damages are not stated in the complaint and plaintiff contests the defendant's assertion of the amount in controversy, the defendant must submit competent, summary judgment-type evidence relevant to the amount in controversy at the time of removal in order to carry its burden. Id. Although a defendant may rely on good faith calculations to satisfy its burden, those calculations must not be

6

based on unreasonable or speculative assumptions. Id. While "damages assessment may require a chain of reasoning that includes assumptions," any such assumptions "cannot be pulled from thin air" and must be predicated on plausible grounds. Id. at 1199.

In Defendants' Notice of Removal, the Defendants alleged the amount in controversy for only one of Plaintiff's eight claims exceeded $5,500,000. Defs.' Notice of Removal, ECF No. 1. The Notice of Removal calculates the violations of California Labor Code Section 226(a), Plaintiff's Sixth Cause of Action, to total $5,518,450. Id. Defendants support this allegation with a declaration from Robert H. Peterman, Jr., a high-ranking corporate official within Primerica Financial Services, L.L.C. ("PFS"). Id. Ex. B, ECF No. 1-1. Mr. Peterman, Jr. declared that based on PFS's records, Defendants made the following distinct payments to three separate and distinct groups of Primerica representatives during the relevant time period.

> For a group of 950 Primerica Representatives in California, Defendants made at least 40 distinct payments to each individual Representative. For a separate group of 282 Primerica Representatives in California, Defendants made at least 30 distinct payments to each individual Representative. For [another] separate group of 479 Primerica Representatives in California, Defendants made at least 20 distinct payments to each individual Representative.

Defs.' Notice of Removal Ex. B at 31, ECF No. 1-1.

Next, Defendants outlined the penalty regime under Section 226(a). Defs.' Notice of Removal, ECF No. 1. Under Section 226(a) an employee "(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred (100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Labor Code, § 226(e)(1). Defendants calculated the violations per representative per pay period and determined that the amount in controversy surpassed $5,000,000 as required by CAFA. Defs.' Not. Removal, ECF No. 1.

7

Plaintiff's argument is not with Defendants' math, but rather with the assumptions on which it rests. Pl.'s Mot. Remand, ECF No. 7. Plaintiff's first contention is that the complaint does not allege a "100% violation rate," but rather that Defendants engaged in a pattern and practice of wage statement violations. Id. Plaintiff contends that 'pattern and practice' "does not necessarily mean always," citing Ibarra, 775 F.3d at 1198-99. Id. But Plaintiff does not indicate why the 100% violation rate is unreasonable. Defendants set forth two separate declarations from Mr. Peterman, Jr. that identify three distinct groups of individuals who received distinct payments from Defendants during pay periods during the time period of alleged violations. Defs.' Not. Removal, ECF No. 1; Defs.' Opp. to Remand, ECF No. 9. Peterman's declarations state an adequate foundation for the reasonableness of his calculations. Plaintiff has not introduced any evidence or provided any arguments to demonstrate otherwise.

Further, upon analyzing the allegations in Count Six and the violations and penalty structure in Cal. Labor Code § 226, it becomes abundantly clear that Defendants' calculations are more than reasonable. Count Six of the Complaint alleges that "as a pattern and practice, Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." Compl. at 19, ECF No. 1-1. This is because, according to Plaintiff, Defendants misclassified Plaintiff and other class members as independent contractors and not employees. Id. "[Plaintiff and other class members] were denied both their legal right to receive, and their protected interest in receiving, accurate and itemized wage statements pursuant to California Labor Code section 226(a)." Id. Cal. Labor Code § 226(a) protects employees, not independent contractors. Thus, it was Defendants' misclassification that resulted in the violations of Labor Code § 226(a). As such, it is entirely reasonable to assume that Defendants committed a "100% violation rate," since the gravamen of Plaintiff's claims are based on Defendants' misclassification of employees as independent contractors.

///

Even if a 100% violation rate is indeed unreasonable as Plaintiff alleges, Defendants' calculations still appear conservative. Defendants did not use the statutory maximum penalty provided by the statute. Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. See Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)). Violations of 226(a) have a statutory maximum penalty of $4,000. Section 226(e)(1). Recalculating Defendants' math using the maximum statutory penalty results in the following numbers:

| Number of Distinct Payments | Number of Representatives | Total Pay Periods (number of reps x number of distinct payments) | Calculations with Statutory Maximum Penalty | Total |
|---|---|---|---|---|
| 40 | 950 | 38,000 | 950 x 4,000 | $3,800,000 |
| 30 | 282 | 8460 | 282 x 4,000 | $1,128,000 |
| 20 | 479 | 9580 | 479 x 4,000 | $1,916,000 |
| | | | | **$6,844,000** |

As the above calculation indicates, even with Defendants' conservative estimations of penalties below the statutory minimum, the amount in controversy is at least $500,000 over the CAFA requirement. Thus, Defendants' calculation of violations for jurisdictional purposes is reasonable, and Plaintiff's Motion to Remand accordingly fails.

**B.     Compelling Arbitration**

The parties do not dispute the existence of the employment agreements, signed by Plaintiff, containing the arbitration provisions encompassing Plaintiff's instant claims. This Court construes Plaintiff's arguments as two-fold. Plaintiff first argues that the entire arbitration clause is unconscionable and invalid. In response, Defendants deny

Plaintiff's claims and argue the arbitration clause delegates the question of arbitrability to the arbitrator because the agreement expressly incorporates the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  Under those rules, according to Defendants, it is for the arbitrator to determine whether the arbitration clause is unconscionable and invalid.  Plaintiff's counter by claiming that the arbitration agreement did not "clearly and unmistakably" delegate arbitrability to the arbitrator.

As stated above, in resolving a motion to compel arbitration, the Court's analysis is limited to (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  These gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986)).  A contracting party may challenge the enforceability of a delegation clause by arguing the delegation is not "clear and unmistakable" or by raising a state law defense to contract formation.  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010).

### 1. Delegating Arbitrability

The clear and unmistakable standard derives the Supreme Court's interpretation of the FAA, and as such, whether the agreement delegated the question of arbitrability to the arbitrator is informed both by Supreme Court precedent as well as supporting Ninth Circuit authority.  Hart v. Massanari, 266 F.3d 1155, 1171-72 (9th Cir. 2001).

The Ninth Circuit considered whether incorporating AAA rules constitutes delegating arbitrability to the arbitrator in Brennan v. Opus Bank, 796 F.3d at 1128-34.  There, the plaintiff claimed the arbitration clause in his employment agreement with his employer (defendant) was unconscionable and thus unenforceable. Id.  The employment agreement contained two relevant portions: (1) the arbitration clause, and (2) the delegation clause which expressly incorporated the AAA rules. Id.  Defendants argued, and the district court agreed, that by expressly incorporating the AAA rules, one

of which provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement," the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator. Id. at 1130. The Ninth Circuit upheld the district court's determination of this issue stating: "[the] incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Id.

Like the agreement in Brennan, the employment agreement here has two arbitration provisions nestled within it. The basic employment agreement contains (1) Section 15a, an arbitration clause, and (2) Section 15b, the delegation clause (incorporating the AAA rules). See ECF No. 5-1. First, the arbitration clause states "any dispute between you and a Primerica Company, . . . or between you and another Primerica agent . . . will be settled solely through good faith negotiation . . . or, if that fails, binding arbitration." Id. The clause continues by defining "dispute" as: "any type of dispute in any way related to your relationship with a Primerica Company that under law may be submitted by agreement to binding arbitration, including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state or local statutes, rules or regulations." Id.

Second, the delegation clause, as Defendants refer to section 15b of the Agreement, states "The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA)." As this language unambiguously incorporates by reference the AAA rules, under Brennan—binding Ninth Circuit case law—this clause can properly be described as delegating arbitrability to the arbitrator. 796 F.3d at 1130. Thus, the arbitration clause clearly and unmistakably delegates arbitrability to the arbitrator.

### 2. State Law Contract Defense

As the arbitration clause clearly and unmistakably delegates arbitrability, before the federal court can intervene, the plaintiff must challenge the specific agreement to arbitrate via a state law defense to contract formation. Rent-A-Center West, Inc. v.

11

Jackson, 561 U.S. at 72-74; see also Brennan, 796 F.3d at 1132. In Brennan, the agreement contained two relevant parts: (1) the arbitration clause, and (2) the delegation provision. Id. at 1133. The plaintiff challenged the first as unconscionable, yet because they failed to specifically challenge the second provision—the agreement to arbitrate arbitrability—the Brennan court found that Rent-A-Center dictated against reviewing that provision. Id. at 1134.

Plaintiff fields multiple unconscionability arguments against the entire Basic Agreement. However, only one of these sub-arguments reference the delegation clause. Rent-A-Center dictates that this Court only consider the Plaintiffs' unconscionability arguments against the delegation clause. 561 U.S. at 72-74.

Construing the Plaintiff's arguments as a whole, the Court determines that Plaintiff does in fact claim that the delegation clause is unconscionable. However, the parties dispute whether Nevada or California law controls the unconscionability analysis, since the Basic Agreement contains a choice-of-law provision. "This Agreement will be governed by the laws of the State of Nevada." ECF No. 5. As this Court sits in California, it must analyze this choice-of-law issued in accord with California's choice-of-law rules. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 1992).

"California courts . . . apply the principles set forth in Restatement [(Second) of Conflict of Laws] Section 187, which reflects a strong policy favoring enforcement of such provisions." Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 464-65 (1992). California courts will enforce a choice-of-law clause in a contract in favor of another jurisdiction's law if there is: (1) a substantial relationship between the contract and the chosen state or some other reasonable basis for the selection of the foreign state's law; and (2) no conflict with a fundamental policy of California Law. See, e.g., Eugene N. Gordon, Inc. v. La-Z-Boy, Inc., No. 2:06-cv-2353-MCE DAD, 2007 WL 1101456 at *2 (E.D. Cal., Apr. 12, 2007) (citing id.)

///

The parties do not dispute whether there is a substantial relationship between the chosen state and the parties or whether there is a reasonable basis for the choice-of-law. The Defendant Primerica Financial Services, LLC, is incorporated in Nevada. This is sufficient for a "substantial relationship" between the chosen state and the parties. See Stryker Sales Corp. v. Zimmer Biomet, Inc., 231 F. Supp. 3d 606, 619 (E.D. Cal. 2017).

Plaintiff attacks the choice-of-law provision on the second portion of the test, that Nevada law is contrary to a fundamental policy of California. Plaintiff argues that Nevada law applies a presumption favoring "independent contractor status in wage and hour claims," whereas California applies a presumption favoring employee status in those same claims. Defendants correctly note that this argument "misses the point." Nevada law must contravene California policy on "the determination of the particular issue," which here is unconscionability, not whether Plaintiff is presumed to be an employee or independent contractor. See, e.g., Wainwright v. Melaleuca, Inc., No. 2:19-cv-02330-JAM-DB, 2020 WL 417546 at *3 (E.D. Cal., Jan. 27, 2020) (Section 187 "instructs courts to identify particular issues and assess whether the choice-of-law clause is enforceable with respect to each discrete issue.") (internal quotations omitted). Thus, Plaintiff's arguments against applying the choice-of-law provision fail and Nevada law governs.

Nevada law is similar to analogous California authority, in that "both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable." Compare Burch v. Second Judicial Dist. Court, 118 Nev. 438, 443 (2002) (quoted), with Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1133 (2011) ("the doctrine of unconscionability has both a procedural and substantive element"). The basis by which a party claims procedural or substantive unconscionability cannot, however, "impose[] a stricter requirement[] on the arbitration agreement than other contracts generally." U.S. Home Corp. v. Ballesteros Trust, 415 P.3d 32, 41 (Nev. 2018).

Procedural unconscionability generally involves the failure to reasonably inform a person of a contract's consequences. In U.S. Home Corp. v. Ballesteros Trust, the Nevada Supreme Court reasoned that if the arbitration agreement was in a smaller font or hidden within the document, then perhaps the plaintiff's argument for procedural unconscionability would hold some merit. 415 P.3d at 41. However, the font was the same standard size throughout the entire contract and thus was not unconscionable. Id.

Plaintiff makes an argument similar to that espoused by the plaintiffs in U.S. Home Corp. The arbitration and delegation clauses are procedurally unconscionable, Plaintiff argues, "because there was surprise." Pl.'s Opp. at 9, ECF No. 11. The delegation clause is "single-spaced with eight-point font, and it is buried as the fifteenth section in the twenty-three section Basic Agreement." Id. at 10. However, the entire agreement is single-spaced with eight-point font. This Court refuses to adopt a rule that would require arbitration agreements to be subject to higher standards than general contracts. See U.S. Home Corp., 415 P.3d at 42.

Since there is no procedural unconscionability, there is no reason under Nevada law to analyze the Plaintiff's arguments for substantive unconscionability. United States Home Corp., 415 P.3d at 42.

**C.    Dismiss or Stay the Proceedings**

A district court has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration. Delgadillo v. James McKaone Enterprises, Inc., No. 1:12-cv-1149 AWI MJS, 2012 WL 4027019 at *3 (E.D. Cal. Sept. 12, 2012).   As the parties agreed to arbitrate arbitrability, it is entirely possible that the arbitrator will either resolve the dispute between the parties or find that the arbitration clause does not cover the dispute. "Consequently, in the Court's view, it would be unwise to dismiss the Complaint altogether. Instead a stay pending completion of the arbitration proceedings one way or the other is the more prudent option." Abaya v. Total Account Recovery, LLC, No. 2:15-cv-01269-MCE-CKD, 2016 WL 3407783 at *3 (E.D. Cal. June 20, 2016).

**CONCLUSION**

For the reasons stated above, the Plaintiff's Motion to Remand (ECF No. 7) is DENIED and the Defendants' Motion to Compel Arbitration and to stay these proceedings pending arbitration (ECF No. 5) is GRANTED.

IT IS SO ORDERED.

Dated: May 14, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE